UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TASHIA FOSTER,

    Plaintiff,

v.

AMERICARE HEALTHCARE
SERVICES, INC., et al.,

    Defendants.

Case No. 2:13-cv-658
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 22). For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED in PART,** and Plaintiff's state claims are **DISMISSED without prejudice.**

### I. BACKGROUND

Plaintiff Foster was employed by Defendant Americare Healthcare Services, Inc. ("Americare"), as a home health aide from 2005 until she resigned in early May, 2013. (Pl. Decl. at 1, ECF No. 27-7.) According to Americare's President, Ms. Nnenna Ndukwe ("Ndukwe"), Americare "provides home health aides to clients who due to age or illness require assistance in their homes." (Ndukwe Decl. at 1, ECF No. 22-1.) Americare's services are "funded in large part by federal Medicare and Medicaid programs." *Id.* In May, 2013, Plaintiff resigned her position with Americare. (Pl. Decl. at 1, ECF No. 27-7.)

On July 8, 2013, Plaintiff filed a complaint asserting claims for unpaid overtime wages and unpaid minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; for unpaid overtime wages and unpaid minimum wages under the Ohio Minimum Fair Wage Standards Act ("MFWSA"), Ohio Rev. Code § 4111.03 and Article II, § 34a of the Ohio

Constitution; and for unpaid wages under the Ohio Prompt Payment Act, Ohio Rev. Code § 4113.15. (Compl., ECF No. 1.)

On March 20, 2015, Defendants filed a Motion for Summary Judgment directed at all of Plaintiff's claims. (ECF No. 22.) On April 27, 2015, Plaintiff filed a Memorandum in Opposition to the motion (ECF No. 27.) On May 14, 2015, Defendants filed a Reply in support of the Motion for Summary Judgment. (ECF No. 28.)

## II.     MOTION TO STRIKE

Plaintiff submitted a declaration with her Memorandum in Opposition to Defendants' Motion for Summary Judgment. (Pl. Decl., ECF No. 27-7.) Defendants have moved to disregard or strike portions of that declaration from the record. (ECF No. 28.)

### A. Standard

There is no Federal Civil Rule that provides a vehicle to strike declarations or portions of declarations from the record. As opposed to striking declarations or affidavits from the record, the better practice is for the Court to disregard any inadmissible evidence offered in them. *See Fox v. Mich. State Police Dep't.*, 173 Fed. App'x 372, 375 (6th Cir. 2006) (explaining that the Federal Civil Rules "do not require the district court to remove documents other than pleadings from the record in a case" and that the documents may appropriately be dealt with on grounds of admissibility); *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 599 (S.D. Ohio 2003) ("a court may disregard inadmissible evidence instead of 'striking it' from the record").

### B. Analysis

Defendants move this Court to disregard or strike Paragraphs 4, 8, and part of 9 of Plaintiff's declaration, arguing that Plaintiff is attempting to create a genuine issue of material fact by offering at summary judgment statements which contradict her earlier deposition

testimony. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."). In *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006), the Sixth Circuit established the following paradigm for determining whether post-deposition affidavits can be considered on motions for summary judgment:

> [A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue.

*Id.* (citations omitted).

Paragraph 4 of Plaintiff's declaration states, "In at least nine pay periods comprising 18 weeks during the Relevant Time Period, I was not paid for all of the hours that I worked." (Pl. Decl. ¶ 4, ECF No. 27-7 at 2.) Defendants contend that Plaintiff's deposition testimony directly contradicts this averment. Specifically, Defendants point to Plaintiff's deposition testimony, in which she stated that she was paid for every hour that she worked. The sequence of testimony is as follows:

> Q. Okay, Were you ever paid for more hours than you actually worked?
> . . . .
> A. No. What I'm saying is I was paid for every hour that I turned in on the time sheet. That's what I'm saying.
> . . . .
> Q. So as I was saying, my calculation is that we have 168 hours reflected in the time sheets, and again, I will represent that the company's records show that you were paid for 118 hours. So 50 hours less than what your time sheets reflect. Do you recall ever having a discrepancy like that –

3

> A. No.
>
> Q. -- on this occasion or any other occasion where you were -- you turned in time sheets for a specific amount, and you were paid for less than that amount?
>
> A. I'm going to say no, because every time I needed to get paid my checks were right, even if I received a separate paycheck. Sometimes I received two.
>
> . . . .
>
> Q. Was it for half – whatever the total amount was, was it half and half? Were they equal?
>
> A. Yes. They equal the total hours that I work, yes.
>
> Q. Did you ever ask Nnenna or anyone else at the company why you received two?
>
> A. Nope. I figured it was right so why worry about it.
>
> . . . .
>
> Q. . . . . I'll represent that my calculations showed this issue, and when I say this issue, I mean you had more hours in your time sheets than hours actually paid. I noticed that several times – excuse me, seven times. But it sounds like you didn't notice that any other -- at any time, I think is what you told me a minute ago. You don't recall ever receiving a check and saying, hey, wait a minute. I worked more hours than this?
>
> A. Correct. I always received my money.

(Pl. Dep. at 204-211, ECF No. 28-1.)

Defendants assert that Plaintiff's averment in her declaration that she was not paid for all hours worked should be disregarded based on her prior testimony. This Court agrees that this paragraph of Plaintiff's declaration directly contradicts her prior testimony, and will disregard the averments in Paragraph 4 of Plaintiff's declaration.

Defendants further assert that the averments of Paragraphs 8 and 9 of Plaintiff's declaration should be stricken or disregarded because they directly contradict Plaintiff's

deposition testimony. In this instance, the Court does not find a direct contradiction between the averments in the declaration and Plaintiff's prior testimony. Paragraph 8 alleges that "[s]everal of [Plaintiff's] regular clients had other family members or other people residing with them" and that, because of that, she "had to provide housekeeping services for the entire household," including "meals, shopping, transportation and other services for those household members," and that "Americare was aware of [her] providing such services and allowed [her] to do so in order to keep the clients as Americare clients." (Pl. Decl. ¶ 8, ECF No. 27-7 at 3.) Plaintiff concludes that "[i]n many weeks, this amounted to more than 20 percent of [her] time . . . ." Id.

Defendants assert that this paragraph contradicts Plaintiff's testimony that (1) only three of her clients lived with family members (Pl. Dep. at 163-164, ECF No. 22-9); (2) Americare informed her that she was forbidden from providing services for her clients' family members, and she followed this rule throughout her employment (id. at 27-28); and (3) when Plaintiff informed Americare about client requests to perform work that indirectly assisted non-client family members, Americare would call the clients to reiterate that Plaintiff was not to assist anyone other than the client (id. at 135-136). (ECF No. 28, at 7-8.) In general, Defendants claim that Plaintiff testified at deposition that she did not engage in any work specifically for a client's family, and in her declaration she avers she provided work specifically for a client's family.

Similarly, Defendants assert that the Court should disregard part of Paragraph 9 of Plaintiff's declaration, as it directly contradicts her deposition testimony. In relevant part, Paragraph 9 of Plaintiff's declaration states that "on several occasions Americare received calls from clients requesting that [Plaintiff] provide additional services that were not on their care plans and [Plaintiff] was told to provide the services." (Pl. Decl. ¶ 9, ECF No. 27-7 at 3.)

5

Defendants assert that this averment directly contradicts Plaintiff's testimony that (1) when she informed Americare of a client request for work that would assist other family members, Americare called the client to let them know she could not perform such work (Pl. Dep. at 135-136, ECF No. 22-9), and (2) she was not permitted to provide services for clients other than those specified in care plans and her services stayed within the parameters of the care plans. (*Id.* at 33, 104-105.) Basically, Defendants frame Plaintiff's deposition testimony as stating that she did not provide service to any of her clients' family members, because these types of services were never specified in a care plan.

However, Plaintiff did in fact testify in her deposition that she provided services to family members that would not be reflected on a client's care plan:

> A. No. I did things that are not on – well, I wouldn't say – the item is on the time sheet, but things I had to do to take care of the client also took progress of taking care of family members that live with the client. You understand what I'm saying? If there's only one bathroom and I'm required to clean the bathroom after the client, who's to say a family member didn't take a shower after the client before I'm done bathing, dressing the client. I have to go clean that bathroom. So I'm cleaning up after their family member as well.
>
> . . . .
>
> Q. For the time that you spent doing work that you felt wasn't just for the client, whether it be laundry – I think that's the only example you gave, and we'll talk about in a minute if there are any other examples, but for those times did you ever document whether it be in a time sheet or some sort of clinical note like, hey, today I had to do laundry for the whole family or anything of that nature?
>
> A. No. I just pick up the phone and call Irene.
>
> Q. Okay. Did you do that every time you had to do something for the family that was outside of what was in your time sheet?
>
> A. Yes.

6

(Pl. Dep. at 133, 141-142, ECF No. 22-9.) In addition to testifying to cleaning the bathroom and doing laundry that included the laundry of persons living in a client's household, Plaintiff testified that she had washed dishes for a household, and emptied trash for a household. (Pl. Dep. at 151, ECF No. 22-9.) Thus, although Plaintiff testified that she did not deviate from the client care plans, she also testified in her deposition that she had provided services for clients' family members, which is a deviation from the client care plans. Therefore, while some of Plaintiff's deposition testimony, taken in isolation, appears to be directly contradictory to Paragraphs 8 and 9 of her declaration, when viewing it in the context of the entire deposition, the appearance dissolves. Defendants' request to disregard the averments in Paragraphs 8 and 9 of Plaintiff's declaration is therefore denied.

### III. SUMMARY JUDGMENT

#### A. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed.

R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 486 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### B. FLSA Unpaid Minimum Wage and Overtime Claims

#### 1. Relevant Facts

Plaintiff brings two claims under the FLSA, 29 U.S.C. § 201, *et seq*. In Claim I, Plaintiff alleges that Defendants failed to pay her the minimum wage for each hour worked, and in Claim III, Plaintiff alleges that Defendants failed to pay her overtime wages. Plaintiff asserts that during the three years prior to her resignation (May 2010 through April 2013), she "was to be paid $10.00" for every hour that she worked. (Pl. Decl. at 1, ECF No. 27-7.) When she was first hired, she was paid $9.00 per hour, but received an increase after a "couple months." (Pl. Dep. at 36, ECF No. 30.) It is not disputed that Plaintiff's hourly wage rate exceeded the state and federal minimum wage rate in effect during the relevant years of Plaintiff's employment.[1] Rather, Plaintiff alleges that she was not paid for all of the hours she worked, including time

---

[1] The Department of Labor's statistics show that Plaintiff's hourly wage rate was higher than Ohio's minimum wage rate and the federal minimum wage rate during the relevant years of Plaintiff's employment. *See* www.dol.gov/whd/minimumwage.htm; www.dol.gov/whd/minwage/america.htm#ohio.

8

spent in mandatory meetings, time spent traveling between clients, and for housekeeping services provided "for the entire household" for some clients who resided with family members. (Pl. Decl. at 2-3, ECF No. 27-7.)

Defendants assert that Plaintiff testified at deposition that she was always paid for every hour she worked. (ECF No. 28 at 6-7.) Additionally, Defendants assert that Americare received several client complaints about Plaintiff during her tenure, including complaints that she arrived late and left early for her shifts, did not show up for shifts, and falsified client care time sheets. (ECF No. 22 at 12.) In 2010, Americare issued Plaintiff an Employee Warning Notice for falsifying time sheets, not staying for her entire shift, and for documenting services and hours not worked. (Ndukwe Decl. at 3, ECF No. 22-1.)

It is undisputed that Plaintiff's mother was her primary client throughout her years of employment as a personal care aide with Americare. (Pl. Dep. at 99, ECF No. 22-9.) In addition to her mother, Plaintiff also cared for several secondary clients, and provided service to other clients when she filled in for other aides on an as-needed basis. (Pl. Decl. ¶ 7, ECF No. 27-7 at 2.) She provided care for one minor client, whose services were paid for through the Franklin County Board of Developmental Disabilities. This necessitated a different client care time sheet, but the services were to be consistent with the services listed in Americare's care time sheets. (Ndukwe Decl. ¶ 8, ECF No. 22-1 at 3.)

As a personal care aide, Plaintiff performed services set forth in Americare's *Home Health Aide Position Description, (Job Title: Personal Care Aide)*. (ECF No. 22-3.) Plaintiff signed the Position Description, acknowledging that she had read and fully understood the conditions, and would "perform those duties to the best of [her] knowledge and ability." *Id.* The major duties and responsibilities in the job description consist of four categories: personal

9

hygiene and care; homemaking; diversion and companionship activities; and errands. The services encompass assistance to clients with "the activities of daily living, from bathing and personal care to light housekeeping and meal preparation." The *Home Health Aide Position Description* describes the activities as including providing assistance with personal hygiene; such as bathing, hair care, shaving, skin care, dressing, dental and denture care, and using the bathroom, including bedpans; limited homemaking, such as emptying trash, preparing meals, washing and putting away dishes, making the bed, and cleaning the bathroom; companionship activities such as going for walks, playing board games, and accompanying the client to appointments; and running errands for their clients, such as picking up prescriptions and purchasing groceries. (ECF No. 22-3.)

Plaintiff was further guided by client "care plans, which identified the services that each client was supposed to receive, and how often they would receive services." (Ndukwe Decl. at 2, ECF No. 22-1.) Plaintiff "was required to fill out and submit client care time sheets, which verified the care that she provided to each client, each day." *Id.* Plaintiff, "like all home health aides at Americare, could not provide services not listed in the client care time sheets or care plan." *Id.* At deposition, Plaintiff concurred that she was not permitted to provide services outside of the services specified in each client's care plan, and she did not deviate from the care plans. (Pl. Dep. at 105, ECF No. 22-9.) ("Q. So are you saying that then you stayed within the bounds of whatever's in the care plan? A. Yeah .... Q. So there was never a time in July 2010 to the time you resigned ... where you ever deviated outside of anyone's care plan? A. No.")

Americare also required Plaintiff to fill out daily client care time sheets that specified what services were provided to each client. Plaintiff testified that turning in the time sheets was mandatory in order to be paid. She further testified that she would not be paid for services if the

10

services were not recorded in the time sheet, and she always turned in her time sheets. (Pl. Dep. at 109-110, ECF No. 22-9.) ("Q. [W]hat was the . . . purpose of filling out time sheets? A. So Ms. Nnenna could get paid so I could get paid . . . . Q. So they were mandatory? A. Oh, yes. Q. If you did work but did not record it in a time sheet, would you get paid for it? A. No. Q. Was there ever a time that you did do work but either forgot or intentionally did not put it in a time sheet? A. I never forgot.") In signing her time sheets, she represented that the services performed and the hours worked were accurate. (Pl. Dep. at 116, ECF No. 22-9.)

Although as stated above, Plaintiff testified that she was required to (and did) stay within her care plans and filled out her time sheets, she also testified that "sometimes" her services also benefitted a client's family members, and this information was not officially recorded. For example, she was asked by a client "to make a full load of clothes" when she did the client's laundry, so as not to waste detergent; she prepared a meal for a client, such as spaghetti, and "there was probably sometimes nothing there left the next day because it was [eaten] by other family members." (Pl. Dep. at 164, 179; ECF No. 30.) She also testified that when she took out her clients' trash, if it was in one receptacle, family members' trash was included. (Pl. Dep. at 151,172-173, 179; ECF No. 30) ("Q. Before we move on from this, I want to make sure I've exhausted what you believe to be nonpersonal care. We have medicine pickup, cleaning the bathroom, dishes, trash removal? A. That's it.").

2. Analysis

a. The Companionship Services Exemption

In 1974, Congress amended the Fair Labor Standards Act to include many "domestic service" employees not previously subject to the Act's minimum wage and maximum hour requirements. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (citing Fair

Labor Standards Amendments of 1974, §§ 7(b)(1), (2), 88 Stat. 62). Congress simultaneously created an exemption, excluding certain subsets of employees from coverage, including "companionship workers." 29 U.S.C. § 213(a)(15). The Department of Labor ("DOL") regulations[2] at 29 C.F.R. § 552.6 define "companionship services" as:

> [T]hose services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services.

The Department of Labor provided additional clarification concerning what *types* of household work would be included in the exemption, in a 1995 DOL Opinion Letter:

> [I]t is our opinion that such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purposes of section 13(a)(15) of the FLSA.

1995 DOL WH LEXIS 22, *2.

In this case, it is uncontested that Plaintiff was employed to provide fellowship, care, and protection for persons of advanced age or infirmity. Plaintiff specifically agrees with Defendants that home health aides who perform companionship services are exempt from the FLSA's minimum wage and overtime pay provisions. (ECF No. 27, at 8.) Therefore, as an initial matter, there is no issue that Plaintiff, as a provider of companionship services, is exempt from the minimum wage and overtime provisions of the FLSA. *See Salyer v. Ohio Bureau of Workers Compensation*, 83 F.3d 784, 787 (6th Cir. 1996) ("household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services" meets the regulatory definition of "companionship services").

---

[2] The Department of Labor has amended its regulation, effective October 13, 2015. Under the new regulation, third-party employers of companionship services providers may no longer avail themselves of the statutory minimum wage and overtime exemptions. *See* www.dol.gov/whd/homecare/litigation.htm

12

There are, however, two exceptions to the companionship exemption, one for "trained personnel," and one for the performance of "general household" work unrelated to the care of the patient or client. The latter is at issue here.

### b. The "General Household" Work Exception to the Companionship Services Exemption

The Department of Labor has defined companionship services to include "household work related to the care of the [patient]," and the regulation further provides that exempt employees may also perform general household work *unrelated* to the care of the patient or client, provided that such work is "incidental, *i.e.*, does not exceed 20 percent of the total weekly hours worked." 29 C.F.R. § 552.6. Plaintiff alleges that she performed "general household" services unrelated to the care of the patient or client in excess of twenty percent of the total weekly hours she worked, and therefore is excepted from the companionship services exemption to the FLSA. (ECF No. 27, at 10.)

### c. Burden of Proof

The Supreme Court has held that an employee who brings a suit under the FLSA for unpaid minimum wages or unpaid overtime compensation "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a). In the present case, it is undisputed that Defendants failed to keep complete records. The *Anderson* Court specifically addressed how the burden of proof is applied when the employer has not maintained complete records:

> The remedial nature of this statute and the great public policy which it embodies, however, militate against making the burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has

13

> the duty under s[ection] 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed.
>
> . . . .
>
> But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. . . . In such a situation we hold that *an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.* The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Id.* (emphasis supplied).

The Sixth Circuit, in considering a case where the employer's records were incomplete, has held that the plaintiff has the burden of proving that his or her employer violated the FLSA, while the employer seeking an exemption to the FLSA bears the burden of proving that the exemption is applicable. *Herman v. Palo Group Foster Home, Inc.,* 183 F.3d 468, 471-72 (6th Cir. 1999) (citing *Anderson*, 328 U.S. at 687-88). The *Herman* court applied the burden shifting formula where the defendants did not keep the records required by the FLSA by first determining whether the Plaintiff Secretary of Labor had presented credible evidence that Defendant's employees had performed work for which they were not properly compensated. Upon this finding, the burden shifted to the Defendant employer:

> The Secretary [of Labor] presented credible evidence that Defendants' employees had performed work for which they were improperly compensated. Defendants did not keep the records required by the FLSA, so the district court properly shifted the burden to Defendants to show that they did not violate the Act. . . . In the face of the Secretary's unrebutted evidence, however, Defendants could not prevail even if the burden did not shift.

*Id.*

In the absence of complete records, this Court must, as prescribed in *Anderson* and *Herman*, determine as an initial matter whether Plaintiff has produced evidence sufficient to prove that she "in fact performed work for which [s]he was improperly compensated." *Anderson*, 328 U.S. at 687-88; *Herman* at 471-472.

In the case *sub judice*, Plaintiff asserts that, because Americare failed to keep all of the records of her service, she has a "lenient burden to meet" to show that she meets the twenty percent "general household" work exception. (ECF No. 27, at 11.) Plaintiff relies on two cases, *Bleyenberg v. D&N Masonry, Inc.*, No. 2:12-cv-00777, 2013 WL 4041784, at *2 (S.D. Ohio Aug. 8, 2013) (plaintiff's motion for summary judgment unopposed), and *Casey v. Qik Pik, Inc.*, No. 3:13-cv-3, 2013 WL 6001870 (S.D. Ohio Nov. 12, 2013) (motion for default judgment granted), for the proposition that the court is entitled to "draw reasonable inferences from Foster's testimony since the records do not exist to refute this testimony." (ECF No. 27, at 11.) Both of these cases address the lenient burden placed on plaintiffs to establish damages after liability has been determined. Plaintiff asserts that because an "estimate is sufficient as a matter of law for proving damages; therefore, it must be sufficient at this stage of the litigation to create a disputed issue of material fact as to the amount of non-companionship services that Foster provided, particularly in those weeks where she did not perform services for her mother . . . ." (ECF No. 27, at 12.)

Defendants disagree with Plaintiff, arguing that the cases upon which she relies are inapposite. The Court, however, need not determine this issue. This is because even when it assumes *arguendo* a lenient burden applies, Plaintiff has not been able to show that she has "in fact performed work for which [s]he was improperly compensated" in this case. Plaintiff's testimony and the evidence of record shows that the *type* of work she performed was household

work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, picking up medicine, and other similar services.

District Courts that have examined whether a plaintiff's services qualified for the "general household" work exception to the companionship services exemption have considered the *types* of services the caregiver provided. *See Anglin v. Maxim Healthcare Servs.*, No. 6:08-cv-689, 2009 WL 2473685 *4 (M.D. Fla. Aug. 11, 2009) (evaluating the decisions of other courts regarding what "type" of work qualifies as "general household" work as distinguished from household work related to patient care); *Terwilliger v. Home of Hope, Inc.*, 42 F.Supp. 2d 1231, 1254 (N.D. Okla. 1999), *affirmed by, adopted by, judgment entered at* 1999 U.S. Dist. LEXIS 23645 (test should be whether a task is necessary for the care of the client, and if so, the task cannot be "general household" work unrelated to the client, and does not count toward the twenty percent exception); *Toth v. Green River Regional Mental Health/Mental Retardation Board, Inc.*, 753 F. Supp. 216, 217-218 (W.D. Ky. 1989), *aff'd sub nom. Hengesback v. Green River Regional Mental Health/Mental Retardation Board, Inc.*, 985 F.2d 560 (6th Cir. 1993) (table) (plaintiffs could not avail themselves of the "general household" work exception where they failed to present "specific facts sufficient enough to support their argument that they spent twenty percent of their time doing general housework").

Defendants contend that in this case, Plaintiff's testimony does not support an inference that she spent more than twenty percent of her weekly working hours doing "general housework" unrelated to the care of her clients. Defendants contend that Plaintiff has "not provided any evidence of non-exempt work she allegedly performed, or how much of it she performed (other than the conclusory assertion that she spent more than 20% of her time doing non-exempt work)." (ECF No. 28, at 17.) To support their argument, Defendants rely on Plaintiff's

deposition testimony describing the *type* of work she performed, which they assert is corroborated by client care time sheets they produced accounting for approximately 75% of the hours she worked during the period at issue. (ECF No. 28, at 17.) Defendants argue that "there is no dispute regarding the total number of hours worked by Foster. Rather, the issue involves the *types* of services she provided, specifically, when those services benefitted other family members." (ECF No. 28, at 17-18.) Defendants argue that Plaintiff "admits that she was not permitted to provide services for a client's family members, and that she abided by this rule throughout her employment," (ECF No. 28 at 12) (Pl. Dep. 27-28, 135, ECF No. 30), and whenever "clients were trying to get her to do work for other family members, Americare called and put a stop to it." (ECF No. 28, at 12) (Pl. Dep. at 135-136, ECF No. 30.) Finally, Defendants argue that they have

> located no case law holding that services provided for clients, but that also incidentally benefits the clients' family, magically turns a service clearly contemplated by the companionship services exemption into an exception to the exemption. Taken to its natural extension, the companionship services exemption would rarely, if ever, be applicable. For example, as Foster conceded, her mother was her main client. Foster Dep., p. 99:4-9. Were the court to accept Foster's argument, then anytime Foster cooked for her mom but made enough for herself to eat, then the companionship services exemption would not apply. . . .

(ECF No. 28, at 12-13.)

Plaintiff's complaint avers that she provided "light housekeeping, personal care, escort and companionship services to the Defendants' clients" and "typically worked 70 hours per week." (Compl. ¶¶ 18, 19, ECF No. 1, at 3.) Defendants argue that a claim that general household work took more than twenty percent of her time would be unreasonable, inasmuch as "[i]t would take less than two hours per week to provide professional-grade cleaning services to Plaintiff's main client's (her mother) entire apartment." (ECF No. 22, at 12, citing Exh. 3.) Rather, Defendants argue that Plaintiff's testimony is that she performed the *types* of services

17

(meal preparation, cleaning the kitchen and bathroom, picking up prescriptions, doing laundry) that fall within the companionship exemption, and on occasion those services benefitted household members.

In support of her claims, Plaintiff points to the *Anglin* court's denial of summary judgment, and asserts that the facts of her case are similar. (ECF No. 27, at 8-9.) Plaintiff argues that, "[g]iven the broad remedial purpose of the FLSA, as well as the fact that its exemptions are to be construed narrowly, it is evident that [Plaintiff's] minimum wage and overtime claims must survive Defendants' Motion." (ECF No. 27, at 8.) However, the *Anglin* plaintiff's testimony characterized the *type* of work she did as that of a "maid" or "housekeeper" to "the entire household." The *Anglin* plaintiff testified in detail at her deposition that she regularly spent more than twenty percent of her time each week performing general housework and tasks for others in the household such as heavy cleaning of the patient's entire house two to three times per week, including rooms never frequented by the patient; daily laundry for the household; changing the bed linens for everyone in the patient's household; grocery shopping for household members using separate shopping lists; and painting portions of the patient's home. *Anglin*, at *4. Even accepting as true Plaintiff's evidence and making all justifiable inferences in her favor, her work is far from the type of work done by the *Anglin* plaintiff. Thus, even though a plaintiff's testimony, without any additional corroboration, can be sufficient to defeat a motion for summary judgment, *Moran v. Al Basit, LLC*, 788 F.3d 201 (6th Cir. 2015), here, Plaintiff's testimony cannot do so. Thus, there is no evidence from which a reasonable jury could find that Plaintiff's work fit within the exception to the exemption. Therefore, Plaintiff's work falls within the companionship services exemption to the FLSA overtime and minimum wage provisions.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Counts I and III.

### C. Plaintiff's State Law Claims

Plaintiff's Complaint also alleges violations of the Ohio Constitution and state law. These claims include: Claim II, failure to pay minimum wages for each hour worked, pursuant to section 34a of Article II, Ohio Constitution; Claim IV, failure to pay overtime wages pursuant to the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03; and Claim V, failure to tender pay when due, pursuant to the Ohio Prompt Payment Act, Ohio Rev. Code § 4113.15. (Pl. Compl., at 4-5, ECF No. 1.)

The Sixth Circuit has held that a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction. "If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooke v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citing *Wojnicz v. Davis*, 80 Fed. App'x 382, 384-85 (6th Cir. 2003)). In this case, the Court has determined that Plaintiff's federal claims do not survive Defendants' motion for summary judgment. The values of economy, convenience, fairness, and comity combine to make it appropriate for a state court to exercise its jurisdiction over these allegations. *See Mine Workers v. Gibbs,* 383 U.S. 715, 726-727 (1966). Additionally, the parties are all citizens of Ohio. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state claims, and dismisses Counts II, IV, and V of Plaintiff's complaint, without prejudice, pursuant to the provisions of 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 22) as to Counts I and III. The Court also **DISMISSES** without prejudice Counts II, IV, and V of Plaintiff's Complaint (ECF No. 1.)

**IT IS SO ORDERED.**

12-11-2015
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**